# Buchalter

18400 VON KARMAN
AVENUE
SUITE 800
IRVINE, CA 92612
949.760.1121 PHONE
949.720.0182 FAX

File Number: M3515-0018
949.224.6254 Direct
jgarfinkle@Buchalter.com

August 27, 2021

**VIA ECF**

Honorable Robert D. Drain
United States Bankruptcy Judge
U.S. Bankruptcy Court for the District of New York
300 Quarropas Street
White Plains, NY 10601-4140

    Re:    The Official Committee of Unsecured Creditors vs.
           (i) McKesson Corp. (Adv. Pro. 17-08264);
           (ii) McKesson Pharmacy Systems, LLC (Adv. Pro. 17-08265); and
           (iii) McKesson Specialty Care Distribution Corp. (Adv. Pro. 17-08266)
           (collectively, the "Adversary Proceedings")

Dear Judge Drain:

    We regret the need to bring this matter to the Court's attention, but unfortunately, the discovery issues between the Parties are complicated, and our request to meet and confer with counsel for the Committee has been met with preconditions that make a mockery of the meet and confer process.

    In the Court's email of August 24, 2021, the Court instructed that "if defendant wants to resolve this discovery dispute on an item-by-item basis, … I will extend the discovery cutoff date further for such an attempt to be made before [a motion to compel] is filed." McKesson promptly agreed to the Court's suggestion and communicated to the Committee's counsel its desire to meet and confer to address the discovery issues on an item-by-item basis.

    Unfortunately, the Committee is refusing to meet and confer with McKesson unless McKesson first agrees to essentially produce all the documents and information that are currently at issue without regard to McKesson's responses and objections. Boiled down, the Committee will not meet and confer unless McKesson concedes on all points. Not only does this turn the meet and confer process upside down, but the Committee's aggressive position is unwarranted.

buchalter.com

Los Angeles
Napa Valley
Orange County
Portland
Sacramento
San Diego
San Francisco
Scottsdale
Seattle

# Buchalter

Honorable Robert D. Drain
August 27, 2021
Page 2

The discovery dispute centers on the Committee's: (i) Third Request for Production of Documents (the "Document Request"); and (ii) First Set of Interrogatories (the "Interrogatories").[1] In response to the Document Request and the Interrogatories, McKesson provided substantial information and documents. However, each of the discovery requests included requests that wandered far from reasonable or sought documents that presented considerable legal and practical challenges to produce. In fact, to respond to many of the requests would have required considerable effort, time and expense that are well beyond the proportional needs of the case. And the Committee will not even meet with McKesson to discuss the undue burden, relevance or proportionality of the requests.

Several examples of requests in the Document Request that McKesson believes are entirely unrelated to the preference lawsuits were referenced in counsel's August 23 letter to the Court and, in the interest of brevity, will not be repeated here.

Suffice it to say that the Committee included comparably overbroad and irrelevant requests in the Interrogatories. For example, Interrogatory No. 4 asked McKesson to:

"[i]dentify any strategic retail customer of a major pharmaceutical wholesaler to which that wholesaler discontinued shipments at any time between January 1, 2013 and July 1, 2016 because the strategic retail customer failed to make one or more payments on time. For each such discontinuation:

   a) Identify the wholesaler, the retail customer, and the date on which the wholesaler discontinued shipments.

   b) State the amount of any payments that were not made on time and the amount of the retail customer's average annual purchases form the wholesaler during the prior two years.

   c) Produce any contracts in effect between the wholesaler and retail customer at the time.

   d) Describe any negotiations between the wholesaler and the retail customer before shipments were discontinued.

   e) Describe how any issues concerning the retail customer's failure to make timely payment were resolved.

   f) Produce all documents concerning the discontinuation or, if the wholesaler was

---

[1] It does not appear that the Committee has any objection to McKesson's responses to the First Set of Requests for Admission which were propounded and responded to at about the same time.

BN 46724386v1

# Buchalter

Honorable Robert D. Drain
August 27, 2021
Page 3

McKesson, produce documents sufficient to establish the facts concerning the discontinuation.

While McKesson is agreeable to producing reasonable information regarding its own conduct, the Committee also is insisting that McKesson produce information regarding the conduct of other wholesalers. The burden of this request would be very significant and the relevance of other wholesalers' conduct is very limited. And yet, the Committee refuses to discuss this issue with McKesson.

McKesson submits that a number of other discovery requests are similarly objectionable, and so advised the Committee. For example, McKesson objected to providing documents related to matters that bore no relationship with the preference actions, such as the handling of pre-petition credits that were used to reduce McKesson's pre-petition unsecured claim. On August 20, the Committee filed a motion to amend the complaints in the Adversary Proceedings to include breach of contract and other claims unrelated to the preference claims. McKesson believes that any requests for discovery associated with these new claims should wait until the Court has ruled on whether the claims could be brought and whether these new claims are time barred.

In an effort to show McKesson's willingness to meet and confer in good faith, McKesson addressed five categories of documents and information that had been enumerated by the Committee, generally offering to produce responsive documents within McKesson's possession, custody or control. As to one of the categories, McKesson asked for guidance, as the item was unclear.[2] In fact, counsel had talked and the Committee's counsel acknowledged that it was likely that many of the separate "topics" were addressed in the advised the Committee that the responses to the First Set of Requests for Admission may have resolved any issue.

With this as a good faith backdrop, McKesson then asked the Committee to agree to an extension of the discovery deadline to enable the parties to fully meet and confer. (A copy of this email is attached.)

The Committee's response was emphatic, saying "[y]our email offers us nothing" and refusing to engage in further meet and confer. In fact, the Committee's position was that McKesson "will have to be willing to offer what we have actually requested …" In other words, no meet and confer – just do as we demand.

McKesson submits this attitude is inconsistent with the obligations of the parties to meet

---

[2] Item number 5 asked for documents or information related to "the topics in our 30(b)(6) letter." That letter identified 22 separate "topics" including "topic 2: "each defendant's factual contentions in each Adversary Proceeding, including contentions concerning deliveries, payment and communications and agreements with A&P" or topic 4: "each affidavit, declaration and expert report submitted or prepared for submission in any of the Adversary Proceedings" or topic 14: "McKesson's conduct concerning, and procedures for addressing, customers' actual or potential financial distress").

# Buchalter

Honorable Robert D. Drain
August 27, 2021
Page 4

and confer pursuant to the Court's instruction in its August 24 email. And after several exchanges of correspondence, the Committee still refuses to meet and confer and to agree to a mutual extension of the discovery deadline to allow the parties time to discuss and hopefully resolve the issues, and to take three depositions that had been discussed between the parties. But to no avail.

Based on the foregoing, McKesson urges the Court to extend the time for discovery until September 30 in order to address the discovery issues and conclude the depositions that the parties had agreed to go forward.

We are available for a telephone conference with the Court if it believes a conference is necessary.

        Very truly yours,

        BUCHALTER
        A Professional Corporation

        */s/ Jeffrey K. Garfinkle*

        Jeffrey K. Garfinkle

cc:    Tracy Klestadt, Esq.
        Richard K. Milin, Esq.

BN 46724386v1

# Winick, Steven H.

**From:** Winick, Steven H.
**Sent:** Friday, August 27, 2021 8:36 AM
**To:** Steve Winick (swinick@buchalter.com)
**Subject:** August 25, 2021 letter

**From:** Slate, Daniel H.
**Sent:** Wednesday, August 25, 2021 4:35 PM
**To:** Richard Milin <rmilin@grifflegal.com>
**Cc:** Michael Hamersky <mhamersky@grifflegal.com>; Garfinkle, Jeffrey K. <jgarfinkle@Buchalter.com>; Winick, Steven H. <swinick@buchalter.com>; Tracy Klestadt <TKlestadt@Klestadt.com>
**Subject:** A&P Open discovery issues [IWOV-BN.FID1434304]

Richard:

This responds to specifically address the five points identified in your email of 8.24 at 6:08pm asking for documents and information related to:

1. The credits, including information about all credits due for refunds through the petition date, and not just July 6

   We believe we have provided substantial documents related to this area (and will work to confirm that).  We are also working to identify an individual(s) who can attest to (i) accuracy of business records provided, and (ii) policies and procedures applicable to rebates and other pre-petition credits.

2. McKesson's treatment of other strategic retailers who missed payments or had financial problems

   We have a substantive problem with this category and the next.  We understand that each supply agreement with each "strategic retailer" has confidentiality provisions comparable to that in paragraph 14A of the Supply Agreement with A&P.  That provision reads:

   > "Any and all accounts, records, books, files, and lists regarding any transaction provided for or contemplated hereunder, including A&P's financial information, shall be confidential and proprietary to the party creating or generating such information. This Agreement, and the terms and conditions hereof, are confidential. The parties expressly agree to maintain such terms and conditions in confidence, and shall take every precaution to disclose the contents of this Agreement only to those employees of each of the parties who have a reasonable need to know such information."

   We are trying to figure out a work around for this.  Subject to confidentiality concerns, as to the strategic retailers identified in Ms. Towsley's deposition, we intend to produce responsive documents within McKesson's custody, possession or control with respect to the time period January 1, 2013, to July 1, 2016.

3. The twelve entities listed in your responses to interrogatories other than A&P

1

Again subject to confidentiality concerns described above, we intend to produce non-public documents within McKesson's custody, possession or control with respect to those entities for the time period January 1, 2013, to July 1, 2016.

4. The $562,000, about which we have no accounting of what has been paid for and almost no internal McKesson correspondence

   We believe we have provided substantial documents related to this area (and will work to confirm that), but nevertheless, we will produce responsive documents within McKesson's custody, possession or control with respect to the time period January 1, 2013, to July 1, 2016.

5. The topics in our 30(b)(6) letter

   As to these topics, we need some guidance from you. When last we spoke on this area, you mentioned that these topics may have been addressed by way of (i) the responses to the requests for admissions, (ii) the response to the first set of interrogatories, and (iii) the expert reports of Mr. Berk and Mr. Kosty. We believe that to be true, so let us know to the extent you disagree.

Timing: For reasons you and I have discussed, we will have a better handle on timing next week, but it is our current expectation (assuming the search criteria and the individuals whose hard drives were duplicated do not need to be expanded) that documents will be provided to you on or before September 17, and a witness for testimony related to rebates/credits the week of the 20th of September. I understand you are not available the week of September 13-17, so hope this timeframe works for you. Based on this, we hope we can agree that discovery can remain open for all parties through the end of September.

Let me know if you have any questions or concerns.

**Daniel Slate**
**T** (213) 891-5444
**C** (213) 716-5227